UNITED METAL GOODS MFG. COMPANY *v.* UNITED STATES
(No. 4982)[1]

United States Court of Customs and Patent Appeals, June 30, 1959

*Sharretts, Paley & Carter, W. R. Johnson, Donald W. Paley,* (*Joseph F. Dono- hue* of counsel) for appellant.

*George Cochran Doub,* Assistant Attorney General, *Richard E. FitzGibbon,* Chief, Customs Section for the United States.

Before WORLEY, Acting Chief Judge, and RICH and MARTIN, Associate Judges

MARTIN, Judge, delivered the opinion of the court.

---

[1] C. A. D. 712.

This is an appeal from the judgment of the Customs Court, Second Division, C.D. 2026, overruling the importer's protest and sustaining the collector's classification of various shipments of zinc-aluminum ingots, as "articles or wares not specially provided for * * * if composed wholly or in chief value of * * * zinc, aluminum, or other metal * * *," under the provisions of paragraph 397 of the Tariff Act of 1930, as modified by T.D. 51802, dutiable at 22½ per centum ad valorem. Appellant claims that the importations are entitled to entry free of duty pursuant to Public Law 869, September 30, 1950, ch. 1119, § 2, 64 Stat. 1093, exempting from duty certain articles "* * * imported to be used in remanufacture by melting * * *." That act provides as follows:

Sec. 1.(a) No duties or import taxes shall be levied, collected, or payable under the Tariff Act of 1930, as amended, or under section 3425 of the Internal Revenue Code with respect to metal scrap, or relaying and rerolling rails.

(b) The word 'scrap', as used in this Act, shall mean all ferrous and nonferrous materials and articles, of which ferrous or nonferrous metal is the component material of chief value, which are secondhand or waste or refuse, or are obsolete, defective or damaged, and which are fit only to be remanufactured.

Sec. 2. *Articles of which metal is the component material of chief value,* other than ores or concentrates or crude metal, *imported to be used in remanufacture by melting,* shall be accorded entry free of duty and import tax, upon submission of proof, under such regulations and within such time as the Secretary of the Treasury may prescribe, that they have been used in remanufacture by melting: *Provided, however,* That·*nothing contained in the provisions of this section shall be construed to limit or restrict the exemption granted by section 1 of this Act.* (Emphasis added.)

Certain other alternative claims for classification were made below, but since those claims were mentioned in neither the brief nor the oral argument of appellant here, they will be deemed to have been abandoned. See *Marianao Sugar Trading Corp.* v. *United States,* 41 CCPA 236, 242, C.A.D. 557.

The subject importations are ingots containing, in all but one instance, approximately 95% zinc and 5% aluminum, permissible minute fractions of copper and lead being present additionally. The alloy is prepared to careful specifications which require that the zinc be 99.99% pure and that no more than .0053% of lead impurity be present therein. Testimony was submitted for the importer to the effect that, upon importation, the merchandise is converted to the molten state and poured into suitable molds for the formation of desired castings. For the most part, the imported ingots are poured by gravity feed into permanent molds for the formation of clock cases and other figures, but one of the importations, being of different composition, is utilized in the trade for the pressure casting of automobile carburetors, grill work, etc.

The Customs Court held that the goods in question did not fall within the scope of the exemption provided by Public Law 869, finding

rather that Congress intended to limit the act's applicability to "scrap" materials. The court further questioned whether the conversion of the imported ingots into castings by melting constituted a "remanufacture" within the legislative intent in section 2 of the public law. It was the opinion of the lower tribunal that articles imported to be used in remanufacture by melting were "* * * articles which had been previously used, such as surplus war material * * *," rather than articles like the imported ingots which "* * * are still objects of commerce to be subjected to successive manufacturing (rather than remanufacturing) processes before reaching their final status * * *."

Appellant contends that the court below erred in its construction of Public Law 869, and that such law, while *including* scrap materials should not be so construed as to be *limited* to such articles. The importer further claims that the melting and casting of the imported ingots constitute a "remanufacture by melting" since those steps involve the destruction of an article (the ingot) and the manufacture of the composition again, into another article (the finished casting).

As has been said by this court so many times before, our function is to determine the legislative intent incorporated within the statutory provisions that come before us for interpretation. *The United States* v. *Durst Mfg. Co., Inc.*, 46 CCPA 74, C.A.D. 700; *Sandoz Chemical Works, Inc.* v. *United States*, 43 CCPA 152, C.A.D. 623. In this case the surrounding circumstances, the legislative history and the wording of Public Law 869 make it apparent that Congress did not intend that such importations as the merchandise at bar be exempt from duty by virtue of section 2 of that act.

It is perfectly obvious that this statute was enacted as a war and post-war measure in an endeavor to facilitate access to scrap metal and surplus war material by the United States. It was conceived during the Second World War years and, although there have been several extensions of the expiration dates, as it now stands, it expires on June 30, 1959 [2] (Public Law 85–453, June 11, 1958, 72 Stat. 184).

The report of the Ways and Means Committee of the House of Representatives No. 996, July 7, 1949, in referring to section 2 of Public Law 869 states:

The bill also adds a new section to the act of March 13, 1942, to allow the admission free of duty of certain articles *technically* not included in the definition of scrap contained in section 1(b). The criterion for exemption from duty is the use of the articles in question in remanufacture by melting. Entry free of duty and import tax is granted only upon submission of proof, under regulations prescribed by the Secretary of the Treasury, that such articles have been imported for, and have been used in, remanufacture by melting. *The new section*

[2] H.R. 6054, providing for a 1-year extension of the suspension of duties on metal scrap, was passed by the House of Representatives, June 24, 1959.

*added to the act of 1942, therefore, would allow the admission of articles, such as surplus war materials which are new, undamaged and not obsolete, if they are imported for, and are used only for, remelting purposes. Since there is a guaranty that such articles are to be used only in remanufacture by melting, they would not compete with domestic industry to any greater extent than would articles that fall within the definition of scrap now in the act of 1942.* (Emphasis added.)

Certainly, the merchandise at bar is not surplus war material.

Coming now to the language of section 2 itself, the phrase which demonstrates that this section does not apply to the importations at bar pertains to the requirement of a "remanufacture by melting." ▆▆▆ A material to be remanufactured must necessarily have previously been manufactured. As used in this section an article which is to be re-manufactured does not encompass intermediate forms assumed during processes of manufacture, but rather embraces articles manufactured for a particular end use and subsequently imported into this country to be melted and remanufactured into other articles. In our opinion it does not include alloys made to definite specifications abroad in the form of ingots and imported into this country, such as the instant importations, to be formed into particular consumer articles.

We agree with the lower court, which stated:

* * * It is our opinion that the articles granted free entry, when imported for use in remanufacture by melting, within the purview of section 2 of Public Law 869 were * * * not articles like the unbreakable zinc casting metal ingots which, although admittedly articles in a broad sense, are still objects of commerce to be subjected to successive manufacturing (rather than remanufacturing) processes before reaching their final status as clockcases and giftware items.

Since we conclude that appellant's contention is erroneous, we therefore must sustain the collector's classification of the merchandise. Accordingly, we *affirm* the judgment of the Customs Court.